The appellant, John Edward Hooper, was found guilty of two counts of rape in the second degree and sentenced to two consecutive five-year terms in the State penitentiary. The appellant then filed an amended motion for judgment of acquittal and, in the alternative, for new trial on January 8, 1986, following the receipt of some evidence; a second amended motion was filed by him on January 23, 1986, following the receipt of other pertinent evidence. All three post-trial motions were set for hearing on February 12, 1986. The trial judge who had heard this case, Judge Webb, retired from the bench, and the Honorable Ernest R. White was appointed to his seat. The defense counsel then requested a continuance until March 27, 1986, because of a delay in the availability of transcripts; the State consented to this continuance and the *Page 471 
order was entered on February 24, 1986. On March 21, 1986, the State filed a motion contending in pertinent part that, under Rule 13(d) of the Temporary Alabama Rules of Criminal Procedure, the appellant's post-trial motions had been denied by operation of law on February 21, 1986. On March 27, 1986, the hearing on the post-trial motions was continued a second time, this time at the request of the trial judge, and again with the consent of the defense and the State. Shortly thereafter, Judge White recused himself and on April 3, 1986, Judge Webb was appointed to hear the post-trial motions. This hearing took place on April 17, 1986. Judge White testified for the appellant that the post-trial motions were continued with the consent of the parties on both February 12, 1986, and March 27, 1986. Judge White testified as follows:
 "DEFENSE COUNSEL: Your Honor, your testimony is going into the record right now. Is it not?
"JUDGE WHITE: Yes.
 "DEFENSE COUNSEL: And it is your testimony that there was an expressed agreement by attorneys for both sides as to the continuances on the dates in question?
 "JUDGE WHITE: Yes. I don't think there's any doubt about that.
 "DEFENSE COUNSEL: All right, sir. It is also your testimony that the agreement to continue this thing, the first agreement, was made prior to February 21, 1986, assuming that a defense attorney followed the court's instructions and prepared an order which was forwarded by cover letter of February 19, 1986.
 "JUDGE WHITE: No doubt in my mind you and the Attorney General's office agreed before the 60 days run out. It's not in writing, my understanding.
 "THE COURT: Judge White, there is nothing in the record reflecting that agreement Mr. Godwin [defense counsel] is referring to; is that correct?
 "JUDGE WHITE: That's correct, nothing in writing. The only thing that I have is my notes from the motion docket stating that it was continued on the January 14 docket. I have it marked continued. And then on the February 12 docket I have it marked continued also. And that probably wouldn't have been done unless it was agreed upon.
 "THE COURT: But neither of those continuances reflected agreement of both parties?
"JUDGE WHITE: No, sir.
 "THE COURT: Nothing in the record reflecting exactly why the continuance was granted?
"JUDGE WHITE: That's correct."
Judge Webb then found that there was nothing in the record reflecting a proper continuance of these post-trial motions and that 60 days had elapsed with no record entry concerning the motions; therefore, he ruled that these motions were denied by operation of law under Rule 13(d) of the Temporary Alabama Rules of Criminal Procedure. As this ruling has jurisdictional implications and because the appellant argues that it was made in error, we will review its propriety.
 I.
Rule 13(d) of the Alabama Temporary Rules of Criminal Procedure addresses the denial by operation of law of a motion for new trial and exactly mirrors the language used in Rule 12.3(f) of the Alabama Temporary Rules of Criminal Procedure, which applies to denial by operation of law of a motion for judgment of acquittal. This rule states:
 "No motion for judgment of acquittal under Rule 13(d) under this Temporary Rule 12.3 [or motion for new trial under Rule 13(d) ] shall remain pending in the trial court for more than sixty (60) days except as provided in this section. A failure by the trial court to rule on such a motion within the sixty (60) days allowed by this section shall constitute a denial of the motion as of the sixtieth day. Provided, however, that with the express consent of the district attorney and the defendant or his attorney, which consent shall appear in the record, the motion may be carried past the sixtieth day to a date certain; if not ruled upon by the trial court as of the date to which *Page 472 
the motion is continued, the motion is deemed denied as of that date, unless it has been continued again as provided in this section. The motion may be continued from time to time as provided in this section."
The commentary to this rule points out that Section (f) is comparable to Temporary Rule 13(d) and is based on Rule 59.1 of the Alabama Rules of Civil Procedure. Rule 59.1 of the Alabama Rules of Civil Procedure states:
 "No post-judgment motion filed pursuant to Rules 50, 52, 55 or 59 shall remain pending in the trial court for more than 90 days, unless with the express consent of all the parties, which consent shall appear of record, or unless extended by the appellate court to which an appeal of the judgment would lie, and such time may be further extended for good cause shown. A failure by the trial court to dispose of any pending post-judgment motion within the time permitted hereunder, or any extension thereof, shall constitute a denial of such motion as of the date of the expiration of the period."
It is clear from a comparison of the language of these rules that the guidelines for their application, especially as to continuances, are the same. Therefore, because of a lack of case law and analysis of Rule 12.3(f) and Rule 13(d) of the Alabama Temporary Rules of Criminal Procedure, and because it is clear that these rules were modeled on Rule 59.1 of the Alabama Rules of Civil Procedure, it would be proper for this court to look to case law regarding this civil rule in construing these two criminal rules.
"Rule 59.1, A.R.C.P., was enacted to 'remedy any inequities arising from failure of the trial court to dispose of post-trial motions for unduly long periods.' " Spina v.Causey, 403 So.2d 199, 201 (Ala. 1981), citing the committee comments to Rule 59.1. It is clear that in the present case the appellant bases his claim that the sixty day period had not run by the time of the hearing on the alleged continuances of this hearing and the consent of the parties thereto, despite the fact that the consent did not expressly appear in the record. The courts have indicated that in order for the party's consent to a continuance to be adequately proven, the record must expressly show that such consent was given. In Personnel Board for Mobile County v.Bronstein, 354 So.2d 8 (Ala.Civ.App. 1977), cert.denied, 354 So.2d 12 (Ala.), cert. denied,354 So.2d 12 (Ala. 1978) when the attorney for the City of Mobile was not present at the hearing on a motion to strike the motion for new trial because of the serious illness of his wife, the City's counsel requested that the matter be continued. The appellee's attorney did not object, nor did he agree to the continuance, and the argument was reset for a certain date. On the ninetieth day after the City's motion was filed, the appellee's attorney wrote a letter to the City's counsel offering condolences and informing him of the date for which the hearing had been reset and, further, offering any necessary cooperation if the date was inconvenient. However, in this letter, at no point did he expressly consent to extend the ninety day period. The hearing was again continued; the circuit court's motion docket is the only record which indicates that the matter was delayed. A flood in Mobile prevented many lawyers from reaching the courthouse, and resulted in yet another delay of the hearing. When the parties finally argued, the trial court ordered the City's motion for new trial denied. The appellate court found that because the ruling came after the ninetieth day following the filing of the motion, and because there was no evidence that the parties expressly consented to the delays, the City's motion was deemed denied on the ninetieth day pursuant to Rule 59.1.
 "Black's Law Dictionary, 377 (4th Ed. 1968) defines 'express consent' as:
 " 'That directly given either [orally] or in writing. It is positive, direct, unequivocal consent, requiring no inference or implication to supply its meaning.'
 The following definition of 'express' is found in Words Phrases, Vol. 15A, p. 522: *Page 473 
 ' "Express" means "made known distinctly and explicitly, and not left to inference or implication; declared in terms; set forth in words; manifested by direct and appropriate language, as distinguished from that which is inferred from conduct. . . ." '
 "In the instant case there was no express consent by appellee's attorney to extend the 90 day time period. While counsel for the appellee did not expressly object to the extensions and delays which caused the 90 day period to expire, he did not expressly consent to extend the time period for disposing of the City's motion beyond 90 days either. Moreover, Rule 59.1 does not require that a party object to actions by the court which extend the 90 day period. It does, however, in clear and unequivocal language, require a party's consent to such an extension."
Personnel Board for Mobile County v. Bronstein, supra, at 10.
In Harrison v. Alabama Power Company, 371 So.2d 19
(Ala. 1979), the appellant contended that the agreement of the parties to a continuance of the hearing on the post-trial motions reflected in the court's order, constituted "express agreement" under Rule 59.1, A.R.Civ.P. However, the court found that the consent to a continuance of a hearing does not satisfy the requirement that the record show the party's expressconsent to an extension of the ninety day period:
 "The language of Rule 59.1 requires express consent. And the law has long recognized a material distinction between 'assent' and 'consent,' the former meaning passive or submissive conduct while the latter involves positive action. [Citation omitted.] In the instant case counsel for appellee did not take positive steps to express in a direct and unequivocal manner that he was willing to extend the 90 day period nor did his assent to the continuation of the proceedings constitute a waiver of the requirement of express consent.' [Quoting Bronstein, supra.]
"If we were to hold otherwise this Court often might be left to sheer guess work in determining whether we had jurisdiction of a case. Further, it would in effect allow the very practice which Rule 59.1 was meant to end, that is dependency of post-trial motions — and therefore the litigation — for indefinite periods of time. See State v.Wall, Ala., 348 So.2d 482 (1977)."
Harrison v. Alabama Power Company, supra, at 21.
Where a court's record contained an entry on a hearing on a motion for new trial on the case action summary sheet which stated that the case was to be reset due to injury of the counsel for plaintiff, the court found that this entry did not indicate the defendant's consent to extend the ninety day period. Thompson v. Thompson, 419 So.2d 247
(Ala.Civ.App. 1982). Furthermore, where no order was entered continuing a hearing on motion for new trial to a date certain, the same was overruled by operation of law. Richburg v.Cromwell, 428 So.2d 621 (Ala. 1983). See also CoosaMarble Co., Inc. v. Whetstone, 294 Ala. 408,318 So.2d 271, 273 (1975).
Had the record contained the express consent of the parties to the extension of the sixty day period, then the motion would have been made in compliance with these rules. Graff v.Graff, 472 So.2d 1089 (Ala.Civ.App. 1985). However, the record contains no such consent and, therefore, in accordance with the language and the spirit of the rule, the appellant's motion for new trial and motion for judgment of acquittal were denied by operation of law.
 II.
The appellant argues that the trial court erred by permitting the State to cross-examine defense character witnesses about particular acts attributed to the appellant. At trial, the defense counsel presented the testimony of 32 character witnesses who testified to appellant's good reputation in the community. During the State's cross-examination of ten of these witnesses, the prosecutor asked the following question or a close variation thereof: "Would it change your opinion of Mr. Hooper's reputation if you knew that he was making his daughter, *Page 474 
a child, watch pornographic films and then having sexual intercourse with her?" The defense counsel objected following each of these questions, but his objections were overruled.
" ' "The general rule is that character, whether good or bad, can only be proved by general reputation and evidence of particular acts or conduct is inadmissible both on direct and cross-examination, though in the latter a greater latitude is allowed that in the former and, while a witness may sometimes on cross-examination be asked irrelevant questions to test his accuracy, veracity, or credibility, even on cross-examination the inquiry must be kept within bounds, and it is not permissible for the inquiry to extend to particular facts or to isolated facts." ' " Lowery v. State, 51 Ala. App. 387,286 So.2d 62, 66, cert. denied, 291 Ala. 787,286 So.2d 67 (1973), quoting Thompson v. State, 100 Ala. 70,71, 14 So. 878 (1893). Therefore, on the cross-examination of a defense character witness, "it is permissible to ask the witness if he had not heard it reported in the community that the defendant had committed certain unworthy acts, naming them, but this even is not allowed for the purpose of affecting the character of the defendant, but is evidence affecting the credibility of the witness testifying to good character. [Citations omitted.] Such examination is also permitted for the purpose of either showing that the witness was mistaken in his estimate, or for shedding light on his estimate of such character." Id., 51 Ala. App. at 392, 286 So.2d at 66
through 67. The form of the question to be asked to such a witness should be "have you heard . . .?" Wedgeworth v.State, 450 So.2d 195, 196 (Ala.Cr.App. 1984).
In Houston v. State, 50 Ala. App. 536, 280 So.2d 797
(Ala.Cr.App.), cert. denied, 291 Ala. 784,280 So.2d 801 (Ala. 1973), during the cross-examination of a defense character witness, the State asked, "[H]ad you heard all the things I had asked that you had not heard, would you still be of the opinion Thomas Jefferson Houston was still a man of good reputation?" Holding that the case had to be reversed and remanded on the basis of that question, the court concluded "that the hypothetical questions propounded the character witness on cross-examination were improper. Each of these two questions [the second question was merely a restatement of the first] elicited testimony tending to show the witness'sconcept of 'good reputation' as opposed to thefact of 'good reputation,' vel non. These cases, and numerous others, unequivocally assert that a character witness's personal definition of 'good reputation' is immaterial. See Thompson v. State, 39 Ala. App. 569,105 So.2d 146 (1958) and Wright v. State, 32 Ala. App. 169, 23 So.2d 517, cert. denied, 247 Ala. 180,23 So.2d 519 (1945), for other examples of this type proper question." Houston v. State, 50 Ala. App. at 540-41,280 So.2d at 800-01. " 'The question asked was as to the particular acts and conduct, and could have had reference to no one else than the defendant. . . . Nor was the question proper, or the evidence sought competent, on the suggestion made by counsel for the State, to ascertain witness's standard of what it took to constitute good character. The answer to the suggestion is: The issue does not involve witness' standard of good character. The issue is good or bad repute in the community in which the person lives, whose character is inquired about. In overruling the defendant's objection to the question, the trial court committed reversible error.' "Id., 50 Ala. App. at 540, 280 So.2d at 800, quotingMoulton v. State, 88 Ala. 116, 6 So. 758 (1889).
As in Shassere v. State, 455 So.2d 192 (Ala.Cr.App. 1984), the State responds by claiming that the inquiries made during the cross-examination of the character witness were proper on the basis of § 27.01(5) of C. Gamble,McElroy's Alabama Evidence (3d ed. 1977), and that the State was testing the credibility of the character witness. "However, as is to be observed from the above quotation from the transcript, the witnesses were not interrogated as to whether they had 'heard reports, rumors or statements derogatory of the accused,' which is the language of the particular cross-examination considered proper in *Page 475 
Gamble, McElroy's Alabama Evidence, supra. The questions were hypothesized, not upon reports, rumors, orstatements by others, but upon the assumed actual existence of such disreputable conduct." Shassere v.State, supra, at 200. It should be noted, however, that the references to the disreputable conduct in the State's questions in Shassere, are to criminal conduct or misdeeds unrelated to the charge for which he was being tried.
In Patrick v. State, 39 Ala. App. 240, 97 So.2d 589
(1957), the appellant, a law enforcement officer, had been convicted of the offense of transporting prohibited liquors. At trial, the State asked of a defense character witness, "Would it affect your opinion of an officer if he conspired to haul whiskey for a man into your county, which is a dry county?" He further asked "If he goes and brings whiskey into your county, which is a violation of the law, would it affect your opinion of him?" The defense counsel objected to each question, and his objections were overruled. This court found that "[a]s framed the question sought to establish the appellant's reputation by particular acts. A witness to character, whether on direct, or cross, examination, is confined to a statement of general reputation in the community, and evidence of particular acts is inadmissible." Patrick v. State, 39 Ala. App. at 245,97 So.2d at 594.
"Thus, the general rule which we can deduce from this line of cases seems to be that it is improper for the prosecuting attorney on cross-examination to ask defendant's character witnesses questions which assume that defendant did an act tending to prove him guilty of the crime charged." Mitchellv. State, 50 Ala. App. 121, 277 So.2d 395, 402
(Ala.Cr.App.), cert. denied, 291 Ala. 794,277 So.2d 404 (1973)
REVERSED AND REMANDED.
All the Judges concur.